IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
PHILIP C. HARTSTEIN,            ) Case No. 12-2270 SC
                                )
         Plaintiff,             ) ORDER DENYING PLAINTIFF'S
                                ) MOTION TO REMAND AND GRANTING
     v.                         ) DEFENDANT'S MOTION TO DISMISS
                                )
REMBRANDT IP SOLUTIONS, LLC,    )
and DOES 1 through 25,          )
inclusive,                      )
                                )
         Defendants.            )
                                )
```

## I.  INTRODUCTION

Plaintiff Philip C. Hartstein ("Plaintiff") brings this action for declaratory relief to invalidate the covenant not to compete in his employment agreement with Defendant Rembrandt IP Solutions, LLC ("Defendant").  Plaintiff asserts that the covenant is contrary to California Business and Professions Code section 16600.  The case was initially filed in the Superior Court of the State of California in and for the County of San Mateo but was subsequently removed to federal court.  ECF No. 1 ("Not. of Removal"). Plaintiff now moves to remand on the ground that the amount in controversy is less than the jurisdictional minimum of $75,000. ECF No. 21 ("MTR").  Additionally, Defendant moves to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) on the ground that Plaintiff's employment agreement includes a mandatory forum selection clause which calls for exclusive

jurisdiction in Pennsylvania. ECF No. 5 ("MTD"). Both motions are fully briefed. ECF Nos. 22 ("MTR Opp'n"), 23 ("MTD Opp'n"), 24 ("Reply ISO MTD"), 25 ("Reply ISO MTR"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for determination without oral argument. As detailed below, the Court DENIES Plaintiff's Motion to Remand and GRANTS Defendant's Motion to Dismiss for improper venue.

## II. BACKGROUND

Defendant is a Delaware limited liability company ("LLC") with a principal place of business in Pennsylvania. ECF No. 3 ("Compl.") ¶ 2. Defendant's sole member is its parent, Rembrandt IP Management, LLC ("RIPM"). RIPM also has only one member -- an individual who resides in and is a citizen of Pennsylvania. ECF No. 19 ¶¶ 2-3. Defendant identifies and develops business opportunities for RIPM, which is engaged in the management of funds focused on investing in intellectual property and related opportunities across a broad spectrum of industries, technologies, and business methods, including generating revenues from patents. Compl. Ex. A ("Empl. Agr.").

On December 23, 2009, Plaintiff, a resident of San Mateo, California, entered into the Employment Agreement with Defendant. Compl. ¶¶ 3, 7; Empl. Agr. The Employment Agreement contains a non-compete provision that restricts Plaintiff from directly or indirectly working for a competitor of Defendant for a period of one year from the termination of his employment unless he first obtains the written consent of the CEO or President of Defendant. Empl. Agr. ¶ 4(a). Additionally, the Employment Agreement bars

Plaintiff from disclosing Defendant's trade secrets and confidential information to third parties. Id. ¶ 9. The Employment Agreement also contains a forum selection clause which provides: "[Plaintiff] and [Defendant] submit to the exclusive jurisdiction of the state courts located in Montgomery County, Pennsylvania and to the Federal courts located in Philadelphia, Pennsylvania as to all actions and proceedings relating in any way to this Agreement and/or [Plaintiff]'s relationship with [Defendant]." Id. ¶ 15.

Plaintiff worked as Defendant's Managing Director of Business Development from January 1, 2010 through March 5, 2012. ECF No. 22-1 ("Wood Decl.") ¶ 5.[1] In his last year of employment with Defendant, Plaintiff earned an annual salary "well in excess" of $75,000. Id. ¶ 6; Not. of Removal ¶ 8. Plaintiff "was jointly responsible for all aspects of [Defendant's] business development efforts, including interaction with patent owners located throughout the United States and the identification of prospective patent investment opportunities." Wood Decl. ¶ 5. Plaintiff was one of only two employees at the company with direct responsibility for generating patent investment leads and opportunities. Id. From March 2011 through February 2012, Plaintiff managed or generated more than one hundred unique investment leads. Id. ¶ 9. The potential expected profit from Plaintiff's leads is in the millions of dollars. Id. ¶ 10.

On March 5, 2012, Plaintiff informed Defendant that he was resigning from the company and requested that Defendant waive the

---

[1] Derek Wood ("Wood"), corporate counsel and secretary for RIPM, filed a declaration in opposition to Plaintiff's Motion to Remand. ECF No. 22-1 ("Wood Decl.").

3

non-compete provision in the Employment Agreement. Compl. ¶ 9. Defendant indicated that it intended to enforce the provision. Id. After leaving Defendant, Plaintiff began employment as Vice President and Portfolio Manager at IPNav. Wood Decl. Ex. A. ("IPNav Press Release"). Plaintiff's new job responsibilities are similar to his responsibilities with Defendant. See id. Defendant and IPNav compete for many of the same patent portfolios and investment opportunities. Id. ¶ 15.

Also on March 5, 2012, Plaintiff filed the instant action in the Superior Court of the State of California in and for the County of San Mateo. Plaintiff seeks a judicial declaration that the non-compete provision is invalid and contrary to section 16600 of the California Business and Professions Code. Compl. ¶ 14. He also seeks a preliminary and permanent injunction barring Defendants from enforcing the non-compete provision. Id. ¶ 19. In the Complaint, Plaintiff alleges that he intends to comply with all other provisions of the Employment Agreement and that he has not misappropriated and has no intention of misappropriating Defendant's trade secrets or confidential information. Id. ¶ 10.

On May 4, 2012, Defendant removed the action to federal court on diversity grounds. In the Notice of Removal, Defendant asserts, on information and belief, that Plaintiff is earning an annual salary in excess of $75,000 with his new employer. Id. Defendant also asserts that the value of its trade secrets and other confidential information known to Plaintiff exceeds $75,000. Id. ¶ 9.

///
///

## III. DISCUSSION

The Court first addresses Plaintiff's Motion to Remand to determine whether it has subject-matter jurisdiction to hear this case. Concluding that the exercise of subject-matter jurisdiction is proper, the Court then considers Defendant's Motion to Dismiss.

### A. Motion to Remand

Plaintiff moves to remand this action back to state court on the ground that Defendant has failed to establish that the amount in controversy exceeds the jurisdictional minimum of $75,000. For the reasons set forth below, the Court finds that Defendant has met its burden.

A defendant may remove a civil action filed in state court if the action could have been filed originally in federal court. 28 U.S.C. § 1441(a). A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. Id. § 1447(c). The general removal statutes are construed restrictively so as to limit removal jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996) (quotations omitted). The burden of establishing federal jurisdiction for purposes of removal is on the defendant. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004).

District courts may exercise diversity jurisdiction in the first instance where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and there is

complete diversity of citizenship between the plaintiff and defendants. 28 U.S.C. § 1332(a). Upon removal, the defendant bears the burden of showing that it is more likely than not that $75,000 is in controversy. See Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). "The value of an injunction may not be capable of precise determination, but precision is not required." Mailwaukee Mailing, Shipment and Equip., Inc. v. Neopost, Inc., 259 F. Supp. 2d 769, 772 (E.D. Wis. 2003). Where, as here, a plaintiff seeks to invalidate a non-competition clause, courts sometimes "look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination to determine the amount in controversy." See Luna v. Kemira Specialty, Inc., 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008) (quotations omitted). Alternatively, courts have considered the Plaintiff's salary or the likely financial impact of Plaintiff's competition during the non-compete period. See Davis v. Advanced Care Techs., Inc., CVS 06 02449 DFL DAD, 2007 WL 1302736, at *2 (E.D. Cal. May 2, 2007). Under any of these measures, the amount in controversy requirement is satisfied here.

With respect to the first measure -- the profits generated by the employee -- RIPM's corporate counsel and secretary declares that "the potential expected profit from many of Plaintiff's investment leads, if acquired and developed, was in the millions of

6

dollars." Wood Decl. ¶ 10.[2]  Plaintiff essentially argues that because the profitability of these leads cannot be precisely or accurately measured until some future date, Plaintiff's value to Defendant's business is too speculative to be considered for the purposes of an amount in controversy determination.  See Reply ISO MTR at 3.  This argument is unavailing.  It is often difficult to directly measure an employee's contribution to a business's profits and revenues.  However, that does not mean the employee's value to the business is zero.  Here, Plaintiff played a central and high-level role in Defendant's business operations since he was one of only two employees with direct responsibility for generating Defendant's patent investment leads and opportunities.  See Wood Decl. ¶¶ 3, 5.  Based on Plaintiff's job responsibilities, the estimate provided by RIPM's corporate counsel, and Plaintiff's salary, see infra, the Court finds it more likely than not that Plaintiff was worth over $75,000 to Defendant.[3]

---

[2] Plaintiff makes a number of evidentiary objections to this and other statements in the Wood Declaration.  Reply ISO MTR at 8-9.  These objections are overruled.  First, Plaintiff objects that a number of Wood's statements are "irrelevant," but offers no coherent explanation as to why evidence concerning the value of the non-compete agreement would be irrelevant to a dispute about the amount in controversy.  Second, Plaintiff objects under Federal Rule of Evidence 602, which provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Here, the evidence shows that Wood is the corporate counsel and secretary for Defendant's parent company, and, thus, is in a position to have personal knowledge of Plaintiff's value to Defendant and his potential value to Defendant's competitors.

[3] If Plaintiff disagreed with this estimate, he was free to offer evidence of his own.  See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (once defendant submits "summary-judgment-type evidence" to establish the amount in controversy, plaintiff has the burden of rebutting that evidence).  He declined to do so.

With respect to the salary-based approach, Defendant paid Plaintiff an annual salary well in excess of $75,000. Wood Decl. ¶ 6. Based on this evidence, it is more likely than not that Plaintiff's new salary with IPNav or one of Defendant's other competitors would be comparable. Plaintiff's arguments against the salary-based approach are unpersuasive. Plaintiff contends that "reliance on a method that values the injunction to a future employer is misplaced." MTR at 7. But the salary-based approach assesses the value of the non-compete to Plaintiff, not his future employer.[4] The non-compete provision effectively bars Plaintiff from earning a salary in his chosen profession for one year. Thus, considering the salary that Plaintiff could command from one of Defendant's competitors is a simple and straightforward way to value the object of this litigation. Plaintiff also argues that this approach is difficult to apply because it requires Defendant "to present competent evidence of the salary [Plaintiff] would make if employed in a field outside the scope of the non-compete covenant, and then compare this hypothetical salary to what [Plaintiff] would make working in a field within the scope of the non-compete covenant . . . ." Reply ISO MTR at 5. But the Court need not compare hypothetical salaries. This is not an action for damages and, thus, the Court need not determine whether Plaintiff has attempted to mitigate his losses. The pertinent point is that the non-compete provision prevents Plaintiff from earning a salary in his chosen field.

---

[4] Alternatively, the salary-based approach could be used to value an employee's value to his or her employer.

1      The Court reaches the same conclusion as to the value of the
2 trade secrets and confidential information known to Plaintiff.  If
3 Plaintiff breaches the Employment Agreement and offers Defendant's
4 investment leads to a competitor, Defendant stands to lose millions
5 of dollars in expected revenues and profits.  See Wood Decl. ¶¶ 8-
6 10.  Further, Plaintiff has detailed knowledge of Defendant's
7 business models, which could have significant value to its
8 competitors.  See id. at 11-12.  Plaintiff argues that the value of
9 the non-compete to Defendant is zero since Plaintiff has not
10 misappropriated and has no intention of misappropriating
11 Defendant's trade secrets or confidential information.  Reply at 6.
12 This argument lacks merit.  Following his resignation, Plaintiff
13 accepted a position with one of Defendant's direct competitors.
14 See Wood Decl. ¶¶ 15-16; IPNav Press Release.[5]  Regardless of
15 Plaintiff's stated intention, the possibility that he will share
16 Defendant's trade secrets and confidential information with this
17 competitor is very real.  In any event, Plaintiff's argument goes
18 to the merits of his claims and, thus, should not be considered
19 before determining whether the Court has subject-matter
20 jurisdiction.  See Davis, 2007 WL 1302736, at *2.

---

[5] Plaintiff argues that the IPNav Press Release is not properly authenticated since it was printed from the internet. Reply ISO MTR at 9.  The Court disagrees.  The press release was published by GlobeNewswire and is self-authenticating under Federal Rule of Evidence 902(6).  See Arachnid, Inc. v. Valley Recreation Products, Inc., 98 C 50282, 2001 WL 1664052, (N.D. Ill. Dec. 27, 2001); but see Trans-Tec Asia v. M/V HARMONY CONTAINER, 435 F. Supp. 2d 1015, 1031 n.20 (C.D. Cal. 2005).  Plaintiff also objects that certain statements in the press release constitute inadmissible hearsay. Reply ISO MTR at 9.  The Court agrees and does not rely on those statements.

9

For these reasons, the Court finds that the jurisdictional amount in controversy requirement has been met and, therefore, DENIES Plaintiff's Motion to Remand.

### B. Motion to Dismiss for Improper Venue

As the Court finds that it has subject-matter jurisdiction, it may properly consider Defendant's Rule 12(b)(3) Motion to Dismiss for improper venue. The gravamen of the motion is that the mandatory forum selection clause in the Employment Agreement requires that "all actions and proceedings relating in any way" to the agreement be litigated in a Pennsylvania court. MTD at 1.

"In diversity cases, federal law governs the analysis of the effect and scope of forum selection clauses." Jones v. GNC Franchising, Inc., 211 F.3d 495, 497 (9th Cir. 2000). A motion to dismiss for improper venue based upon a forum selection clause is governed by the rule set forth in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). Id. In Bremen, the Supreme Court held that a forum selection clause is presumptively valid and should control unless a party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." 407 U.S. at 15. The court also stated that a forum selection clause should be held unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought." Id. If the forum selection clause is enforceable, the Court may either dismiss the action or transfer the litigation to the parties' selected forum. See 28 U.S.C. § 1406(a).

Plaintiff argues that enforcement of the Pennsylvania forum selection clause is unreasonable since it would contravene

10

California's strong public policy against covenants not to compete. MTD Opp'n at 3. Plaintiff's argument proceeds as follows: Plaintiff's case is sure to succeed in California because California law disfavors covenants not to compete. See id. at 6. On the other hand, if the Court enforces the forum selection clause and the case proceeds in Pennsylvania, then Plaintiff is likely to lose because Pennsylvania courts generally uphold covenants not to compete. See id. Thus, enforcing the forum selection clause "would deprive [Plaintiff] of the protection of his own jurisdiction's laws and remedies." Id.

The problem with Plaintiff's argument is that it does not challenge the reasonableness of the forum selection clause itself, only the reasonableness of its effect. A substantially similar argument was raised and rejected in Manchester v. Arista Records, Inc., 1981 U.S. Dist. LEXIS 18642 (C.D. Cal. Sept. 15, 1981). The court reasoned:

> The plaintiff's analysis would unduly complicate the analysis of this issue in future cases. If the Court adopted plaintiff's argument, each court presented with a forum selection clause issue would be forced to make a determination of the potential outcome of the litigation on the merits in the transferee forum and to consider whether that outcome would conflict with a strong public policy of the transferor forum. Although such a course might seem relatively simple in a case such as this, in which there are no factual disputes presented, it would become complicated and uncertain in cases involving complex legal questions or voluminous amounts of disputed issues of fact. Thus, each Court presented with the issue would be involved in detailed speculation on the merits at the outset of the action.

Manchester, 1981 U.S. Dist. Lexis 18642, at *15-16.

As Defendant points out, a number of other courts have followed this reasoning and rejected the argument that the

11

1  enforcement of a forum selection clause would contravene
2  California's strong public policy against covenants not to compete.
3  See Loughlin v. Ventraq, Inc., 10-CV-2624-IEG BGS, 2011 WL 1303641,
4  at *7 (S.D. Cal. Apr. 5, 2011); Mahoney v. Depuy Orthopaedics,
5  Inc., CIVF 07-1321 AWI SMS, 2007 WL 3341389, at *8 (E.D. Cal. Nov.
6  8, 2007); Swenson v. T-Mobile USA, Inc., 415 F. Supp. 2d 1101, 1104
7  (S.D. Cal. 2006); see also Besag v. Custom Decorators, Inc., CV08-
8  05463 JSW, 2009 WL 330934, at *4 (N.D. Cal. Feb. 10, 2009) ("a
9  party challenging enforcement of a forum selection clause may not
10 base its challenge on choice of law analysis").  The Court finds
11 this line of authority to be persuasive.
12     Plaintiff unsuccessfully attempts to distinguish this
13 authority from the instant action.  MTD Opp'n at 7-9.  While there
14 are minor distinctions in the facts, the holdings of Manchester and
15 Defendant's other cases clearly apply here.  Plaintiff also argues
16 that the Ninth Circuit's decision in Jones demands a contrary
17 result.  That case is inapposite.  In Jones, the court found that a
18 Pennsylvania forum selection clause in a franchise agreement
19 contravened section 20040.5 of the California Business and
20 Professions Code, which provides that "[a] provision in a franchise
21 agreement restricting venue to a forum outside this state is void
22 with respect to any claim arising under or relating to a franchise
23 agreement involving a franchise business operating within this
24 state."  Jones, 211 F.3d at 498-99.  Thus, in Jones, the issue was
25 whether the forum selection itself was contrary to California law.
26 In contrast, here, the issue is whether the Court should enforce
27 the forum selection clause because some other provision of the
28 Employment Agreement is purportedly contrary to California law.

Accordingly, the Court finds that the Pennsylvania forum selection clause in the Employment Agreement is valid and enforceable and GRANTS Defendant's Motion to Dismiss for improper venue.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff Philip C. Hartstein's Motion to Remand and GRANTS Defendant Rembrandt IP Solutions, LLC's Motion to Dismiss for improper venue. This action is DISMISSED without prejudice. Plaintiff may re-file the action in another venue consistent with the forum selection clause of the Employment Agreement.

IT IS SO ORDERED.

Dated: July 30, 2012      /s/ Samuel Conti

UNITED STATES DISTRICT JUDGE